**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Southern Division)

| | | |
|---|---|---|
| **MICHAEL LONG,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Case No. GLS 23-2392** |
| | : | |
| **GET U TRUCKING, LLC** *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OPINION**

Pending before the Court is the "Motion to Dismiss" ("Motion") filed by Defendants Get U Trucking, LLC ("Get U Trucking"), Todd Bethune ("Defendant Bethune"), and Haymanot Getu ("Defendant Getu," and collectively "Defendants"). (ECF No. 43). Plaintiff Michael Long ("Plaintiff") filed an Opposition. (ECF No. 44). Defendants did not file a Reply, and the time for filing has since expired. *See* Loc. R. 105.2(a) (D. Md. 2023). Accordingly, briefing on the matter is complete. The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023).

For the reasons set forth below, the Motion is **DENIED**.

I.    **BACKGROUND**

A.  **Procedural Background**

On August 31, 2023, Plaintiff filed a Complaint against Defendants Get U Trucking and Bethune. (ECF No. 1). On September 1, 2023, Plaintiff was notified that the case was assigned to the undersigned pursuant to Standing Order 2019-007 and, that same day, the Court entered a Case Management Order precluding the filing of dispositive motions and tolling the deadlines to file any such motions until consent was obtained from all parties or the case was reassigned to a district

judge. (ECF Nos. 3–4). On October 20, 2023, Defendants' counsel entered her appearance and filed a Motion for Extension of Time to File an Answer. (ECF Nos. 8–9). On October 24, 2023, the Court granted Defendants' request for an extension, giving Defendants until November 20, 2023 to file a response to Plaintiff's Complaint. (ECF No. 11). Thereafter, in accordance with 28 U.S.C. § 636(c), all parties consented to proceed before the undersigned for all proceedings. (ECF No. 14). On October 30, 2023, the Court entered a Letter Order setting forth the protocols in this case for the filing discovery and substantive motions. (ECF No. 15).

On November 20, 2023, Defendant filed a Motion to Dismiss, which the Court struck for violating the protocols set forth in its Letter Order and directed the Defendants to proceed in accordance with its prior order. (ECF Nos. 16, 19). On December 4, 2024, Plaintiff filed correspondence in which Plaintiff noted that Defendants had not responded to the Complaint and requested a conference related thereto. (ECF No. 20). On January 10, 2024, Defendants filed a Notice of Intent to File a Motion to Dismiss. (ECF No. 23). On January 11, 2024, the Court held a telephonic conference, during which the parties discussed Defendants' Notice and relevant caselaw and the potential for a referral for early mediation. (ECF No. 24). On January 12, 2024, the Court issued an Order memorializing its rulings during the conference and directed Defendants to file any notice of intent to file a motion to dismiss, or answer, by February 12, 2024, and further directed the parties to file a Joint Status Report by February 29, 2024. (ECF No. 25). Thereafter, Defendants timely filed their Notice and Plaintiff filed a letter response. (ECF Nos. 26, 28).

On February 29, 2024, the parties filed a Joint Status Report in which they requested the case be referred to mediation before a U.S. Magistrate Judge. (ECF No. 29). On March 1, 2024, the case was then referred for mediation to another U.S. Magistrate Judge. (ECF No. 30). A settlement conference was thereafter scheduled for June 27, 2024, and then rescheduled to July 22,

2024. (ECF Nos. 31-32). On July 19, 2024, the mediator judge determined that the case was not in a posture to have a meaningful settlement conference and canceled the scheduled settlement conference. (ECF No. 33). Eleven days later, on July 30, 2024, Plaintiff filed his Amended Complaint. (ECF No. 34, "Amended Complaint").

In the Amended Complaint, Plaintiff adds Haymanot Getu as a defendant and advances the following claims against all Defendants: Count I, willful failure to fully and timely pay Plaintiff all wages promised and earned, in violation of the Maryland Wage Payment Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501 *et seq.*; Count II, in the alternative, for breach of contract for the failure to pay wages promised and earned; Count III, in the alternative, for unjust enrichment, for failure to pay wages promised and earned; and Count IV for retaliation against and constructive discharge of Plaintiff, in violation of the Maryland Equal Pay Act ("MEPA"), Md. Code Ann., Lab. & Empl. § 3-301 *et seq.* (*Id.*).

On August 14, 2024, in accordance with the Court's Order, the parties submitted a Joint Status Report in which they notified the Court that Defendant Getu would waive service and file a response to the Amended Complaint by September 3, 2024. (ECF No. 37). On September 3, 2024, Defendants filed a "Notice of Intent to File a Motion to Dismiss." (ECF No. 39). On September 11, 2024, Plaintiff filed a letter response. (ECF No. 41). Thereafter, the Court issued a briefing schedule for Defendants' motion to dismiss. (ECF No. 42). On October 17, 2024, the Defendants timely filed a motion to dismiss, and Plaintiff subsequently filed his Opposition on November 15, 2024.[1]

---

[1] On November 22, 2024, a Notice was filed related to the Chapter 13 bankruptcy proceedings initiated by Defendant Todd Bethune. (ECF No. 45). The Court resolved the bankruptcy-related issue via separate order. *See* ECF No. 58.

### B.  Factual Background[2]

Defendants employed Plaintiff as a CDL-licensed, over-the-road truck driver from in or about July 27, 2022 to in or about January 5, 2023. (Amended Complaint, ¶ 21). Get U Trucking operated as a Maryland for-profit business that provided over-the-road interstate trucking and car hauling delivery services to clients across the country. (*Id.*, ¶ 4). Defendants Bethune and Getu were the controlling or managing members of Get U Trucking and the primary owners of the company. (*Id.*, ¶¶ 5–6). As such, Defendants Bethune and Getu controlled, managed, and oversaw the administration and business operations of Get U Trucking and acted as the senior manager and supervisors of its employees, including any non-employee contractors. (*Id.*, ¶¶ 7–9). Specifically, Defendants Bethune and Getu controlled, managed, supervised, and directed the essential terms and conditions of Plaintiff's employment at Get U Trucking. (*Id.*, ¶¶ 15–16). In addition, Defendants Bethune and Getu maintained employment-related records on behalf of Get U Trucking, and held the authority to hire, fire, or otherwise administer employment-related discipline and to set and amend work duties and compensation plans for all Get U Trucking employees and non-employee contractors. (*Id.*, ¶¶ 9–12).

Prior to, or during, the relevant period of employment, Plaintiff and Get U Trucking agreed to a valid and binding compensation plan. (*Id.*, ¶ 22). Pursuant to this agreement, Plaintiff was to be paid by Get U Trucking $39.00 per hour for all hours worked. (*Id.*). In addition, prior to, or during, Plaintiff's period of employment with Get U Trucking, Plaintiff signed an agreement that purported to classify Plaintiff as a non-employee independent contractor; however, the economic

---

[2] Unless otherwise noted, the facts are taken from the Amended Complaint, (ECF No. 34), and are construed in the light most favorable to the non-moving party, Plaintiff. This Court assumes Plaintiff's version of facts to be true. *See Baltimore Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp. 3d 574, 584 (D. Md. 2019) ("In reviewing a 12(b)(6) motion, a court must accept as true all of the factual allegations contained in the complaint and must draw all reasonable inferences from those facts in favor of the plaintiff.").

realities of Plaintiff's relationship with Defendants was that of an employee-employer relationship. (*Id.*, ¶¶ 23–24). Plaintiff and Defendants Bethune and/or Getu, on behalf of Get U Trucking, executed these contracts confirming the terms and conditions of Plaintiff's job duties and compensation. (*Id.*, ¶ 16).

As an over-the-road truck driver, Plaintiff performed compensable employment duties that inured to the Defendants' benefit. (*Id.*, ¶ 26). These duties included driving Defendants' company truck on routes that were assigned by the Defendants in accordance with the compensation plan set by the Defendants. (*Id.*). Plaintiff performed these duties totaling approximately sixty-five to seventy hours of work a week. (*Id.*). Plaintiff recorded his compensable hours in an electronic time-keeping application that the Defendants kept and maintained. (*Id.*, ¶27). Pursuant to the compensation agreement, Plaintiff ultimately earned and was entitled to a total amount of between $65,000 and $75,000 for his hours worked. (*Id.*, ¶ 28). However, for the entirety of Plaintiff's employment, Defendants paid Plaintiff a total amount in wages of $11,000. (*Id.*, ¶ 29). All decisions to withhold earned wages from Plaintiff were made by Defendants Bethune and/or Getu on behalf of Get U Trucking. (*Id.*, ¶ 13).

In or about December 2022 and January 2023, Plaintiff made several verbal and written inquiries and complaints to the Defendants regarding the past-due balance on his earned wages. (*Id.*, ¶ 36). The Defendants regarded these inquiries and complaints as irritating, insubordinate, and a threat to Defendants' authority over Plaintiff. (*Id.*, ¶ 38). On or about January 5, 2023, Plaintiff contacted the Defendants and informed them that unless they paid Plaintiff his earned and past-due wages, he would not perform any additional work for them. (*Id.*, ¶ 39). Plaintiff also informed Defendants that if they wished to retrieve their company truck, which was parked in Plaintiff's driveway in Tennessee, that Defendants could arrange to have the truck picked up and

returned to them. (*Id.*). At first, Defendants agreed to pay Plaintiff at least a portion of his earned and past-due wages, but then recanted and refused to pay Plaintiff at all. (*Id.*, ¶ 40). Thereafter, Defendants' refusal to pay Plaintiff his earned and past-due wages made Plaintiff's continued employment untenable and intolerable resulting in Plaintiff's notice of resignation. (*Id.*, ¶ 41).

Defendants subsequently contacted police authorities and falsely and fraudulently reported that Plaintiff stole the Defendants' truck. (*Id.*, ¶ 42). This led to Plaintiff's arrest and detainment until the matter was ultimately dismissed by the court. (*Id.*).

## II.    THE LAW

### A.  Motion to Dismiss: Rule 12(b)(6)

A defendant who files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is asserting that, even if a court construes the facts alleged in the plaintiff's complaint as true, the complaint fails to state a claim upon which relief can be granted.

To survive a motion to dismiss, a complaint must provide a defendant with "fair notice of what the claim is and the grounds upon which it rests." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). In other words, a complaint must contain sufficient facts to state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (complaint must set forth enough facts as to suggest a "cognizable cause of action"). A claim has "facial plausibility" when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When resolving a 12(b)(6) motion, a court accepts as true the well-pleaded allegations in a complaint. *Lokhova. v. Halper,* 995 F.3d 134, 141 (4th Cir. 2021). Furthermore, a court "does not

resolve contests surrounding the facts [or] the merits of a claim." *Ray*, 948 F.3d at 226 (citation omitted).

### B.  Motion to Dismiss: Rule 12(b)(2)

When advancing an argument under Fed. R. Civ. P. 12(b)(2), a defendant "must affirmatively raise a personal jurisdiction challenge." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020). When a court's power to exercise personal jurisdiction over a defendant is challenged under Rule 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)); *see also UMG Recordings, Inc.*, 963 F.3d at 350.

If the jurisdictional challenge turns on disputed facts, then a court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If the court chooses to rule without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also Mylan*, 2 F.3d at 60; *Combs*, 886 F.2d at 676. In such a circumstance, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

Moreover, "unlike the rubric of Rule 12(b)(6), in resolving a 12(b)(2) motion, 'a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction.'" *Doe v. Mercy High Sch., Inc.*, Civ. No. JRR 23-1184, 2024 WL 3103396, at *8 (D. Md. June 24, 2024). Thus, to determine whether a plaintiff has met his/her burden of making a

prima facie showing of personal jurisdiction, a court may rely on affidavits and any other "relevant matter" submitted by the parties. *68th St. Site Work Grp. v. Airgas, Inc.*, Civ. No. SAG 20-3385, 2021 WL 4255030, at *5 (D. Md. Sept. 16, 2021) (citing Wright & Miller, 5B Fed. Prac. & Proc. § 1351, at 305 (3d ed. 2004)) (explaining that a court has "considerable procedural leeway" when resolving a Fed. R. Civ. P. 12(b)(2) challenge and "may receive and weigh the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts"). Furthermore, when performing this analysis, a court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan*, 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

## III.    DISCUSSION

### A.  The Parties' Arguments

In the Motion, Defendants advance three principal arguments. First, Defendants contend that the Amended Complaint should be dismissed because it was not timely filed in accordance with Fed. R. Civ. P. 15(a)(1). Second, Defendants contend that all counts against Defendant Getu should be dismissed because the Court lacks personal jurisdiction over her. Third, Defendants assert that Plaintiff has failed to allege sufficient facts to plausibly make out claims for breach of contract, unjust enrichment, and violations of the MWPCL or the MEPA. (Motion, pp. 3–12).

In the Opposition, Plaintiff counters that dismissal is inappropriate for three reasons. First, the Amended Complaint was timely, because it was filed less than 21 days after Defendants filed their motion to dismiss. Second, Defendant Getu is a resident and property owner in Maryland and thus the Court has personal jurisdiction over her. Third, Plaintiff has pleaded sufficient facts to plausibly make out claims for breach of contract, unjust enrichment, and violations of the MWPCL and MEPA. (Opposition, pp. 1–11).

### B.  Amendment Under Federal Rule of Civil Procedure 15

Defendant contends that the Amended Complaint should be struck for violating Rule 15(a)(1) because it was filed "11 months after service of the original Complaint on Defendants," and "8 months after the Defendants filed their first Motion to Dismiss." (Motion, p. 4). Plaintiff counters that the Amended Complaint is timely because it was filed before 21 days had passed since Defendants filed the pending Motion. (Opposition, pp. 1–2).

The Court need not address either party's argument under Fed. R. Civ. P. 15(a)(1). Instead, the Court will exercise its discretion under Fed. R. Civ. P. 15(a)(2)[3] and deny the motion to dismiss the Amended Complaint. Analyzing the procedural history of this case, the Court must consider the tolling of deadlines pending the parties' consent to this Court's jurisdiction and the  parties' request for early mediation and early mediation efforts which in effect paused the proceedings before the undersigned for approximately six months after the action was filed. *See, e.g.,* ECF Nos. 3, 4, 14, 15, 29, 31–33.  Accordingly, under these specific factual circumstances, "justice so requires" that the Court allow Plaintiff to advance his case via the Amended Complaint. *See* Fed. R. Civ. P. 15(a)(2). Indeed, had Plaintiff filed such a motion, given this procedural posture, the Court would have granted it. Accordingly, the Court denies any request to dismiss the Amended Complaint.

### C.  The Court Has Personal Jurisdiction Over Defendant Getu

In the Motion, Defendants assert that all claims must be dismissed as to Defendant Getu because this Court does not have personal jurisdiction over her. In so arguing, Defendants contend that Plaintiff has "fail[ed] to adduce a shred of facts, and evidence, to support the allegations" that the Court has personal jurisdiction over Defendant Getu. (Motion, p. 5). Defendants maintain that

---

[3] Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

the Court cannot have jurisdiction over Defendant Getu under Md. Code Ann., Cts. & Jud. Proc. § 6-103 ("Section 6-103"), because she holds no managerial responsibilities, decision-making capabilities, or ownership in Get U Trucking. Ultimately, Defendants argue that Plaintiff "only speculates that the evidence in support of personal jurisdiction over Ms. Getu exists" and that "therefore Ms. Getu must be stricken as a Defendant. (Motions, pp. 4–7).[4]

In the Opposition, Plaintiff counters that the Court has jurisdiction over Defendant Getu because under Section 6-103(b)(5), Defendant Getu is a person who has an interest in, uses or possess real property in Maryland. More broadly, Plaintiff contends that because Defendant Getu is a Maryland resident, this Court has personal jurisdiction over her. (Opposition, pp. 2–3).

Pursuant to Rule 4 of the Federal Rules of Civil Procedure, a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *See* Fed. R. Civ. P. 4(k)(1)(A); *Carefirst*, 334 F.3d at 396.  As relevant here, then, the Court turns to Maryland statutes related to personal jurisdiction.

Section 6-103, relied upon by the parties in their briefing, pertains to personal jurisdiction over defendants based solely on "arising out of" jurisdiction. However, the Court finds that  Md. Code. Ann., Cts. & Jud. Proc. § 6-102(a) ("Section 6-102(a)") provides an appropriate basis for the exercise of personal jurisdiction where, as here, Plaintiff alleges that Defendant Getu is a

---

[4] Although not entirely clear to the Court, Defendants also appear to aver that "technically the Court could treat Ms. Getu's Motion to Dismiss for lack of personal jurisdiction as a Motion for Summary Judgement" because as the Defendants explained, Defendant Getu has no interest in Get U Trucking and "[a]t no time did Defendant Getu control, manage, supervise, or direct the essential terms of Plaintiff's employment with Get U Trucking, LLC." (Motion, p. 6). In effect, Defendants appear to be arguing that the aforementioned arguments advanced in their briefing is information "outside the four corners of the Complaint." (*Id.*). However, Defendants do not formally argue for summary judgment on this issue. (*Id.*). Moreover, the Court declines any request to construe the Motion as a motion for summary judgment. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (finding summary judgment usually inappropriate when parties have not had an opportunity for "reasonable discovery"). First, the Defendants have put only argument before the Court regarding Defendant Getu, not evidence. Second, contrary to Defendants' assertions, unlike a Rule 12(b)(6) motion, when resolving a Rule 12(b)(2) motion, the Court may look beyond the Amended Complaint to "assure itself of personal jurisdiction" without converting the motion to one for summary judgment. *Mercy High Sch., Inc.*, 2024 WL 3103396, at *8.

resident and domiciliary of Maryland. (Amended Complaint, ¶¶ 2–3). Specifically, Section 6-102(a) provides that:

> A court may exercise personal jurisdiction as to any cause of action over **a person domiciled in**, served with process in, organized under the laws of, or who maintains his principal place of business in the State.

Md. Code Ann., Cts. & Jud. Proc. § 6-102(a) (emphasis added). The word "domicile" is defined as:

> [T]he place with which an individual has a settled connection for legal purposes and the place where a person has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning. The controlling factor in determining a person's domicile is his intent. One's domicile, generally, is that place where he intends to be.

*Midtown Pers., Inc. v. Dave*, Civ. No. PWG 13-3493, 2014 WL 3672896, at *4 (D. Md. July 22, 2014) (cleaned up) (further citations omitted). In determining a person's domicile, courts consider a number of facts, including: where a person lives and votes; where a person pays taxes and owns property; where a person's children attend school; the address at which the person receives mail; a person's statements as to residence; licenses or governmental documents; and any other facts revealing jurisdiction. *Id.* (further citation omitted). Once domicile is established, an individual retains her domicile until evidence affirmatively shows an abandonment of that domicile. *Id.*

As there was no evidentiary hearing, Plaintiff need only make a prima facie showing of personal jurisdiction over Defendant Getu. *See Mylan*, 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

In the Amended Complaint, Plaintiff alleges that Defendant Getu is a resident and domiciliary of Maryland who lives in Prince George's County. (Amended Complaint, ¶ 3). Plaintiff further alleges that Defendant Getu owns, operates, and manages a business in Maryland, i.e., Get U Trucking. (*Id.*, ¶¶ 5–8). In addition, to establish jurisdiction, Plaintiff has provided a

copy of the Maryland Department of Assessments and Taxation which reflects that Defendant Getu: (a) owns property located at 3204 Steed Rod, Fort Washington, Maryland; (b) uses that Maryland property as her "primary residence;" and (c) has owned that property for seven years. (ECF No. 44-1). The Court can properly consider these documents. *See 68th St. Site Work Grp.*, 2021 WL 4255030, at *5. Thus, accepting the allegations in the Amended Complaint as true, drawing all reasonable inferences in favor of jurisdiction, and considering other "relevant matter"— i.e., the assessment records submitted by Plaintiff—the Court finds that it has personal jurisdiction over Defendant Getu pursuant to Section 6-102(a) and Fed. R. Civ. P. 4. [5] *See id.*; *Midtown*, 2014 WL 3672896, at *4; *Combs*, 886 F.2d at 676.

Moreover, nowhere in the Motion do Defendants contend that Defendant Getu is not a Maryland resident. And, Defendants did not file a Reply in this case, in which they could have responded to Plaintiff's arguments regarding Defendant Getu's residence/domicile.

Accordingly, the Court denies Defendants' motion to dismiss all claims as to Defendant Getu for lack of personal jurisdiction.

### D. Plaintiff's MWPCL Claim

In the Motion, although not entirely clear to the Court, Defendants appear to argue that individual liability under wage payment statutes exists only in the context of sole proprietorships. As such, Defendants seem to aver that individual liability under the MWPCL is not available in this case because Plaintiff advances claims against both Defendants Bethune and Getu, and as such there can be no individual liability as to either because Get U Trucking is not a sole proprietorship. (Motion, p. 8). Defendants next contend that Count I must be dismissed against Get U Trucking

---

[5] The Court notes that it may also have personal jurisdiction over Defendant Getu pursuant to Section 6-103(b)(5) because Defendant Getu "has an interest in, uses, or possesses real property in" Maryland. Md. Code Ann. Cts. & Jud. Proc. § 6-103(b)(5).

because Plaintiff has failed to allege or plead two of the "economic reality" test factors: work schedule and maintenance of employment records. According to Defendant, then, Get U Trucking is not an employer. (Motion, pp. 9–10).[6] In the Opposition, Plaintiff counters that individual liability under the MWPCL exists and that that he has sufficiently pleaded a plausible claim that the Defendants are "employers" under the MWPCL. (Opposition, pp. 3–6).

In Maryland, "[t]he MWPCL is a statutory cause of action, the purpose of which is 'to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" *Cunningham v. Feinberg*, 107 A.3d 1194, 1202 (Md. 2015) (quoting *Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 658 A.2d 680, 686 (1995)). The statute provides that "each employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505(a). An employer is defined as "any person who employs an individual in the State." *Id.* § 3-501(b).

Contrary to Defendants' assertions, the law is clear that employees can have multiple employers under the MWPCL,[7] and that an individual may be held jointly and severally liable, along with his/her business, as an employer under the statute. *See Pinnacle Grp., LLC v. Kelly*, 178 A.3d 581, 604–05 (Md. Ct. Spec. App. 2018); *see also Roley v. Nat'l Pro. Exch., Inc.*, 474 F. Supp. 3d 708, 721 (D. Md. 2020), *aff'd*, 860 F. App'x 264 (4th Cir. 2021) (unpublished opinion).

An individual's liability under the MWPCL turns on whether the individual qualifies as an employer under the statute. *See Campusano v. Lusitano Const., LLC*, 56 A.3d 303, 308 (Md. Ct.

---

[6] Defendants also quote at length language in *Qun Lin v. Cruz*, 239 A.3d 720 (Md. Ct. Spec. App. 2020), related to piercing the corporate veil, but advance no arguments related to that quoted language. (Motion, p. 9, n.1). The Court cannot presume what their arguments may be, nor can the Court act as an advocate of Defendant's behalf. Accordingly, the Court declines to engage in any analysis related to this issue.

[7] *Watkins v. Brown*, 173 F. Supp. 2d 409 (D. Md. 2001), to which the Defendants cite, predates the relevant Maryland caselaw, which holds that individual liability exists under MWPCL. *See* cases cited in Section III.D, *infra*.

Spec. App. 2012). To determine whether an individual can be considered an "employer" under the MWPCL, Maryland courts employ the "economic reality" test. *Id.* at 308. Thus, courts consider whether the purported employer:

> (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.

*Newell v. Runnels*, 967 A. 729, 771–72 (Md. 2009); *Campusano*, 56 A.3d at 308. Accordingly, the Court will apply the "economic reality" test to determine whether Plaintiff has alleged sufficient facts to establish that Defendants Bethune and Getu are employers under the MWPCL.

As to the first factor, Plaintiff alleges that Defendants Bethune and Getu had the power and authority to hire, fire, or otherwise administer employment-related discipline to all of Get U Trucking's employees or non-employee contractors. (Amended, Complaint, ¶ 9). As to the second factor, Plaintiff alleges that Defendants Bethune and Getu controlled, managed, and oversaw the administration and business operations of Get U Trucking and acted as the senior managers and supervisors of its employees, including any non-employee contractors. (*Id.*, ¶¶ 7–9). Specifically, Plaintiff alleges that Defendants Bethune and Getu controlled, managed, supervised, and directed the essential terms and conditions of Plaintiff's employment with Get U Trucking. (*Id.*, ¶¶ 15–16). As to the third factor, Plaintiff alleges that Defendants Bethune and Getu held the power and authority to set and alter or amend compensation plans and compensation decisions related to Get U Trucking's employees and non-employee contractors. (*Id.*, ¶ 11). Moreover, Plaintiff alleges that Defendants Bethune and Getu made the decision on behalf of Get U Trucking to withhold or fail to fully and timely pay Plaintiff his earned wages. (*Id.*, ¶ 13). Finally, as to the fourth factor, Plaintiff alleges that Defendants Bethune and Getu maintained employment-related records on behalf of the Get U Trucking (*Id.*, ¶ 9). Thus, accepting the alleged facts as true and drawing all

reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has plausibly pleaded that Defendants Bethune and Getu are employers under the MWPCL.

In addition, Defendants improperly rely on *Qun Lin v. Cruz*, 239 A.3d 720 (Md. Ct. Spec. App. 2020), to argue that individual liability is only available in the context of sole proprietorships. Indeed, Defendants appear to confuse the applicable legal standards when arguing that Defendants Getu and Bethune cannot be employers under the MWPCL because it "defeats the argument of sole proprietorship." (Motion, p. 9).

In *Qun Lin*, the trial court found an individual defendant to be the owner of a business and held him personally liable for the unpaid wages of that business' employees. 239 A.3d at 724. On appeal, the appellate court held that it was unclear whether the trial court imposed individual liability by finding that the defendant was the sole proprietor of the business or whether the trial court had found the defendant to be an employer under the MWPCL and pursuant to the "economic reality" test. *Id.* at 740–41. In its opinion, the court specifically opined that individual liability under MWPCL—and the "economic reality" test—and individual liability under a theory of sole proprietorship are two separate and distinct theories of liability under which a plaintiff can recover unpaid wages. *Id.* at 734–39 (explaining first employer liability and the "economic reality" test under the MWPCL and then explaining sole proprietorship liability). In the Motion, the language upon which Defendants rely in *Qun Lin* comes from the portion of the opinion in which the court analyzed individual liability under the sole proprietor theory of liability, not employer liability under the MWPCL. *Id.* at 738–39. Accordingly, Defendants misapply the holding of *Qun Lin*, where the appellate court specifically opined that a person can be individually liable for unpaid wages if he/she is found to be an employer under the "economic reality" test. *Id.* at 735–38. Indeed, the *Qun Lin* court's holding is consistent with this Court's finding, *supra*, that the Plaintiff has

plausibly pleaded that Defendants Bethune and Getu are employers under the MWPCL.

Next, the Court turns to Defendants' contention that Count I must be dismissed as to Get U Trucking because Plaintiff failed to allege two factors of the "economic reality" test. Defendants, again, misapply the relevant law. The "economic reality" test is used to determine whether an **individual** is an "employer" under the MWPCL and can be held **personally liable** for unpaid wages. *Qun Lin*, 239 A.3d at 724 (emphasis supplied). Put another way, the "economic reality" test is not used to determine whether a corporate or business entity is an employer. *See Roley*, 474 F. Supp. 3d at 719 (not applying the economic reality test when finding that a business meets the definition of an employer under the MWPCL).

Here, Plaintiff has plausibly alleged that Get U Trucking is an employer, and his employer, under the MWPCL. In particular, Plaintiff alleges that: (a) Get U trucking is a company formed under the laws of the State of Maryland; (b) has its principal office in Prince George's County, Maryland; and (c) that it operates as a for-profit business based out of the state. (Amended Complaint, ¶¶ 2–3). Plaintiff further alleges that he was employed by Defendants, performed compensable work for Get U Trucking and its owners, and that Defendants paid him a portion of his earned wages. (*Id.*, ¶¶ 17, 22, 26, 28–29). Thus, accepting the alleged facts as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has plausibly pleaded that Get U Trucking is an employer under the MWPCL. *See Roley*, 474 F. Supp. 3d at 719 (finding that a business that had an office in Maryland was an employer under the MWPCL).

In sum, Defendants' motion to dismiss Count I is denied.

### E.  Plaintiff's Breach of Contract Claim

In the alternative, Plaintiff alleges that the Defendants breached a contract by failing to compensate him for all of the hours of work that he performed for Get U Trucking. (Amended

Complaint, ¶¶ 50–53).

In the Motion, Defendants argue that Plaintiff "bases his Amended Complaint on allegations, [does] not include any contract as an Exhibit," and thus has "failed to show certain and definite evidence" of a contractual obligation between the parties and a material breach of that obligation by the Defendants. (Motion, p. 11).

In the Opposition, Plaintiff counters that the Amended Complaint adequately pleads a breach of contract claim. Plaintiff further asserts that at the motion to dismiss stage, he is not required to produce documentary evidence of a contract. (Opposition, pp. 6–7).

To make out a breach of contract claim under Maryland law, Plaintiff must prove: (1) the existence of a contractual obligation owed by a defendant to a plaintiff; (2) a material breach by the defendant; and (3) damages. *See Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015); *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010). In addition, at the motion to dismiss stage, "a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Ne., LLC*, 994 A.2d at 442. Thus, at this procedural posture, Plaintiff is not required to produce documentary evidence supporting the existence of a contract. *Id.*

In the Amended Complaint, Plaintiff alleges that he and the Defendants entered into an agreement that he would perform compensable work for Get U Trucking. (Amended Complaint, ¶¶ 16, 22). Plaintiff further alleges that his promised rate of pay was $39.00 per hour for the work that he performed. (*Id.*, ¶ 22). And indeed, Plaintiff alleges that he performed such work on behalf of Defendants pursuant on to that agreement, that Defendants were aware of Plaintiff's performance, and that Defendants breached the promise to pay him for the entirety of that work by withholding $49,000 to $59,000. (*Id.*, ¶¶ 22, 26, 28–29, 30).

Accordingly, accepting the allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has plausibly pleaded a breach of contract claim by alleging the existence of a contractual obligation owed by Defendants to pay Plaintiff for work performed, a material breach of that obligation by the Defendants when they failed to do so, and damages to Plaintiff.

In sum, Defendants' motion to dismiss Count II is denied.

### F.  Plaintiff's Quantum Meruit and Unjust Enrichment Claims

In the alternative, Plaintiff alleges that Defendants were unjustly enriched when they failed to reasonably compensate him for the work that he performed for their benefit. (Amended Complaint, ¶¶ 54–57).

In the Motion, Defendants contend that Plaintiff's claim for unjust enrichment should be dismissed because Plaintiff: (a) failed to allege a gain to the Defendants; and (b) failed to allege the value of the goods or services provided by Plaintiff to Defendants. (Motion, pp. 11–12).

In the Opposition, Plaintiff counters that the Amended Complaint adequately alleges that the Defendants received the benefit of Plaintiff's over-the-road hours of "teamster toil" in Get U Trucking's truck. Put another way, Plaintiff contends that he adequately alleged that Defendants unjustly received the benefit of Plaintiff's free labor when they refused to fully compensate Plaintiff for the work that he performed. (Opposition, p. 8).

In Maryland, "[u]njust enrichment and quantum meruit, both 'quasi-contract' causes of action, are remedies to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided." *Ward v. Int'l Bus. Mach. Corp.*, Civ. No. BAH 24-685, 2025 WL 936418, at *8 (D. Md. Mar. 27, 2025). However, a claim for unjust enrichment or quantum meruit may not be brought "where the subject

matter of the claim is covered by an express contract between the parties." *All Weather, Inc. v. Optical Sci., Inc.*, 443 F. Supp. 3d 656, 667 (D. Md. 2020) (citation omitted). That being said, a plaintiff may "plead in the alternative" by bringing claims for both unjust enrichment or quantum meruit and breach of contract. *Id.*; *see also J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 608 (D. Md. 2015) (explaining that "although [plaintiff] may not recover under both contract and quasi-contract theories, it is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute" (quoting *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002)).

To establish a claim for unjust enrichment or quantum meruit under Maryland law, a plaintiff must plead that:

> (1) the plaintiff confer[red] a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return.

*Willis v. Bank of Am. Corp.*, Civ. No. ELH 13-02615, 2014 WL 3829520, at *27 (D. Md. Aug. 1, 2014) (citing *Benson v. State*, 389 Md. 615, 651–52, 887 A.2d 525, 546 (2005)).

Here, Plaintiff alleges that he performed work for the Defendants' benefit in furtherance of their trucking business. Specifically, Plaintiff alleges that he performed valuable services by driving Get U Trucking's truck on routes assigned by Defendants under circumstances in which both parties reasonably expected Defendants to pay Plaintiff a fair and equitable sum of earned wages for the truck driving and related services performed for the Defendants' primary benefit. (Amended Complaint, ¶¶ 26, 55). Plaintiff further alleges that Defendants knowingly received the benefit of Plaintiff's services rendered because Plaintiff logged his hours in an electronic time-

keeping application maintained by the Defendants. (*Id.*, ¶ 27). Finally, Plaintiff alleges that Defendants failed to pay Plaintiff the fair and reasonably expected compensation for Plaintiff's services. (*Id.*, ¶¶ 56–57).

Having construed the facts in Plaintiff's favor, the Court finds that Plaintiff has adequately pleaded that he performed work for the Defendants which benefitted them, and that Plaintiff's unjust enrichment/quantum meruit claim seeks to recover the value of that benefit. *See State Constr. Corp. v. Slone Assocs., Inc.*, 385 F. Supp. 3d 449, 468 (D. Md. 2019) (denying defendants' motion to dismiss a quantum meruit claim because plaintiff alleged that it performed construction work to the benefit of the defendants and sought to recover the value of that benefit from the defendant).

Moreover, in advancing their arguments, Defendants cite to *Owens v. SheffelI*, No. 1947, Sept. term, 2019, 2021 WL 225796, at *6 (Md. Ct. Spec. App. Jan. 22, 2021), and *Chassels v. Krepps,* 174 A.3d 896, 906 (Md. Ct. Spec. App. 2017), but provide no analysis as to the relevance of either case. (Motion, pp.11–12). In the Opposition, Plaintiff counters that the caselaw Defendants rely upon is distinguishable because one case is not law and the other case does not support Defendant's position. (Opposition, p. 8).

First, Plaintiff correctly notes that pursuant to Md. Rule 1-104, as an unpublished opinion *Owens* cannot be considered precedent or persuasive authority and cannot be cited for the same. Second, the holding in *Chassels* does not help Defendants, but actually supports this Court's holding that Plaintiff has adequately pleaded an unjust enrichment claim. In *Chassels*, the plaintiff and his ex-wife had agreed to maintain a life insurance policy for the benefit of their shared child. 174 A.3d at 899–900. After the wife passed away, the plaintiff brought suit on behalf of his child alleging that his ex-wife and her new husband took a benefit from the child by halting the payments

into the insurance policy and pocketing the insurance premiums. *Id.* at 906. Plaintiff further alleged that the husband was aware that keeping the premiums deprived the child of the benefits of the policy, and that the husband and plaintiff's ex-wife took these benefits for an inequitable reason, namely for themselves. *Id.* at 906. On appeal, the court reversed the lower court's dismissal of plaintiff's unjust enrichment claim, holding that plaintiff had adequately alleged that defendant received a benefit, knowingly, and retained such benefit unjustly. *Id.* at 906. The holding in *Chassels*, then, is consistent with the Court's finding that Plaintiff has adequately pleaded an unjust enrichment claim.

In sum, Defendants' motion to dismiss Count III is denied.

### G.  Plaintiff's MEPA Retaliation/Constructive Discharge Claim

Plaintiff alleges that Defendants violated the MEPA and constructively discharge/retaliated against him when they: (1) refused to pay him his owed wages; and (2) falsely reported to law enforcement that he stole their truck. (Amended Complaint, ¶¶ 58–67).

In the Motion, although not entirely clear to the Court, it appears as though Defendants aver that: (a) Plaintiff admitted, "via his allegations," that he could never meet the threshold requirement for constructive discharge; and (a) Plaintiff's refusal to return Defendants' truck was in effect stealing and thus negates any retaliation claim because Plaintiff's stealing of the truck justifies Defendants conduct, i.e., calling law enforcement and/or withholding wages. (Motion, p. 12).

In the Opposition, Plaintiff counters that his MEPA claims are adequately pleaded because after he demanded his unpaid wages and refused to work for free, the Defendants failed to pay him those wages, and opted instead to retaliate against him by falsely reporting him to law enforcement. Moreover, Plaintiff denies that he admitted that he could never meet the required threshold for

constructive discharge or that he stole the Defendants' truck. (Opposition, p. 9).

Turning first to Plaintiff's retaliation claim, in October 2020, the Maryland Code was amended to provide that an "employer may not . . . take any adverse employment action against an employee for inquiring about the employee's wages." Md. Code Ann., Lab. & Empl. § 3-304.1(a)(3). As previously found by a court in this District, "[n]o court has addressed a claim of retaliation under the MEPA." *Raines v. Am. Fed'n of Tchrs. – Md. Pro. Emps. Council, AFL-CIO Loc. 6197*, Civ. No. ADC 19-1266, 2019 WL 4467132, at *10 (D. Md. Sept. 18, 2019). However, the court in *Raines* denied the defendant's motion to dismiss the plaintiff's MEPA retaliation claim by looking to the MEPA's federal analogue, the Equal Pay Act ("EPA"). *Id.*

Under the EPA, retaliation claims are subject to the same analysis as claims of retaliation brought under Title VII and Section 1981. *Id.* (citing *E.E.O.C. v. Nucletron Corp.*, 563 F. Supp. 2d 592, 597 (D. Md. 2008)). Thus, to establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) his employer took adverse action against him; and (3) a causal connection existed between the protected activity and the adverse action. *Id.* A plaintiff may establish a causal connection through: (a) facts that suggest the adverse action occurred because of the protected activity; or (b) temporal proximity. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (further citations omitted).

Since *Raines*, which predates the October 2020 amendment, no case—federal or state—has addressed retaliation claims under the MEPA generally, or the provision upon which Plaintiff relies. As such, the Court finds *Raines* instructive.[8] Thus, in analyzing whether Plaintiff has

---

[8] Indeed, in other contexts, courts often looked to the EPA for guidance when analyzing claims brought under the MEPA. *See, e.g., Schrof v. Clean Earth, Inc.*, Civ. No. BPG 22-1533, 2023 WL 3763984, at *4 (D. Md. June 1, 2023) ("The MEPA was modeled after the federal Equal Pay Act, and 'courts have applied the same analysis in reviewing MEPA and EPA claims' because '[t]he MEPA essentially mirrors . . . the EPA.'" (quoting *Cohens v. Md. Dep't of Hum. Res.*, 933 F. Supp. 2d 735, 745 (D. Md. 2013)).

sufficiently pleaded a retaliation claim, the Court will look to the MEPA's federal analog.

Accordingly, Plaintiff must allege that: (1) he engaged in protective activity; (2) his employer took adverse action against him; and (3) there is a causal connection between the protected activity and the adverse action.

As to the first element, Plaintiff alleges that he engaged in protected activity under the MEPA in or about December 2022 and January 2023 when he inquired about his unpaid wages. (Amended Complaint, ¶ 62). Plaintiff specifically alleges that during this time he contacted Defendants regarding his unpaid wages, and that Defendants regarded such inquiries as irritating, insubordinate, and a direct threat to Defendants' authority. (*Id.*, ¶¶ 61–63). Then, on January 5, 2023, Plaintiff informed Defendants that he would not perform any further work for Defendants until he was paid his owed wages, and that Defendants could make arrangements to facilitate the return of their vehicle—which was parked at Plaintiff's residence in Tennessee—to them. (*Id.*, ¶ 64). Thus, when accepting the factual allegations as true and drawing all reasonable inferences in favor of Plaintiff, Plaintiff has sufficiently pleaded that he engaged in protected activity under the MEPA.

As to the second element, Plaintiff alleges that Defendants took adverse action against him when Defendants initially agreed to pay him at least a portion of his unpaid wages but then recanted and withheld the funds. (*Id.*, ¶ 65). Plaintiff alleges that Defendants' refusal to pay made his continued employment and performance of work duties untenable and intolerable and was, in effect, a constructive discharge,[9] which forced him to resign. (*Id.*, ¶ 66). Plaintiff further alleges that Defendants took adverse action against him when they called law enforcement and falsely reported that Plaintiff stole Defendants' truck. (*Id.*, ¶ 67).  In sum, accepting the facts as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently

---

[9] For the reasons discussed *infra*, Plaintiff has also plausibly pleaded a constructive discharge claim.

pleaded that the Defendants took adverse employment action against him.

As to the third element, Plaintiff alleges that he made inquiries in December 2022, and January 2023, and then informed Defendants that he would not continue to perform work until he was paid his owed wages. (*Id.*, ¶¶ 63–64). Plaintiff further alleges that Defendants regarded such inquiries as irritating, insubordinate, and a direct threat to Defendants' authority over him. (*Id.*, ¶ 38). Thereafter, the Defendants initially agreed to pay Plaintiff, but then recanted and refused to pay him. (*Id.*, ¶¶ 65–66). Defendants then called law enforcement officers and falsely reported that Plaintiff stole Defendants' truck. (*Id.*, ¶ 67). Accepting these factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has plausibly alleged that the Defendants took these adverse actions because of Plaintiff's protected activity.

In sum, the Court finds that Plaintiff has sufficiently pleaded facts that make out a retaliation claim under the MEPA.

Next as to Plaintiff's constructive discharge claim, the law is clear that constructive discharge is not a standalone claim, but rather can satisfy the element of an adverse employment action in a substantive claim. *See Schrof v. Clean Earth, Inc.*, Civ. No. BPG 22-1533, 2023 WL 3763984, at *7 (D. Md. June 1, 2023) (collecting cases). Here, Plaintiff properly brings his constructive discharge claim together with his retaliation claim under the MEPA. (Amended Complaint, ¶¶ 58–67).

"A constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Brady v. Bd. of Educ. of Prince George's Cnty.*, 222 F. Supp. 3d 459, 475 (D. Md. 2016) (quoting *Bristow v. Daily Press. Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)) (cleaned up) (further citations and quotations omitted), *aff'd*, 707 F. App'x 780 (4th Cir. 2018) (unpublished opinion). To make out a constructive

discharge claim, a plaintiff must prove: (1) deliberateness of the employer's action; and (2) intolerability of the working conditions. *Id.*

As to the first element, Plaintiff alleges that Defendants knew of the work that Plaintiff performed for Get U Trucking on Defendants' behalf and failed to compensate Plaintiff fully for that work. (Amended Complaint, ¶¶ 26–30). Plaintiff further alleges that he made inquiries to the Defendants regarding his owed wages and that Defendants regarded such inquiries as irritating, insubordinate, and a direct threat to Defendants' authority over Plaintiff. (*Id.*, ¶¶ 37–38). Plaintiff then contacted Defendants and informed them that he would not perform additional work until he was paid his earned wages. (*Id.*, ¶¶ 39, 64). Defendants initially agreed to pay Plaintiff at least a portion of his unpaid wages but then recanted and refused to pay him. (*Id.*, ¶¶ 40, 65). Thus, accepting the alleged facts as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has sufficiently alleged that Defendant's withholding and refusal to pay him the entirety of his earned wages was deliberate.

As to the second element, Plaintiff alleges that Defendants only paid Plaintiff a portion of the wages that he was owed for the work that he performed. Specifically, Plaintiff alleges that Defendants only paid him $11,000 of the $60,000 to $70,0000 that he was owed. (*Id.*, ¶¶ 26, 28–30). Defendants' refusal to pay Plaintiff after he made multiple inquiries regarding his unpaid wages made his continued employment and performance of work duties untenable and intolerable which forced Plaintiff to resign. (*Id.*, ¶¶ 41, 66). When accepting these allegations as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has plausibly alleged that continuously being paid a fraction of what he was owed for the work that he performed made continued employment with Defendants intolerable thereby forcing him to quit.

Finally, in support of their arguments, Defendants cite to *Evans v. International Paper*

*Company*, 936 F.3d 183 (4th Cir. 2019), but provide no analysis related to their argument. (Motion, p. 12). In opposing the Motion, Plaintiff counters that *Evans* is not relevant because it is a case out of North Carolina not Maryland. (Opposition, p. 9). Because the Court has already found that Plaintiff has adequately pleaded a retaliation claim and constructive discharge under the MEPA, it need not address whether *Evans* is relevant to its analysis.

In sum, the Court finds that, when accepting the factual allegations as true and construing them in his favor, Plaintiff has plausibly pleaded a retaliation claim and constructive discharge claim under the MEPA. Accordingly, the Defendants' motion to dismiss Count IV is denied.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss, (ECF No. 43), is hereby **DENIED**.

A separate Order will follow.

Date: May 12, 2025                                   _____/s/_____
                                                                    The Honorable Gina L. Simms
                                                                    United States Magistrate Judge

26